**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE**

Vincent Schonarth, et al.

     v.                                 Civil No. 06-cv-151-JM

Dennis A. Robinson,
Director, Carroll County
Department of Corrections

## O R D E R

In this civil rights action brought pursuant to 42 U.S.C. §
1983, plaintiffs Vincent Schonarth, Bruce Blomquist and Philip
Haley challenge the conditions of their confinement at the
Carroll County House of Corrections ("CCHOC"), where they were
held as pretrial detainees at different times between March 2002
and October 2003.[1]  The CCHOC was demolished in November 2003,
and plaintiffs are now housed at the Northern New Hampshire

---

[1]In the complaint, plaintiffs sought class action status;
however, no motion has been filed to certify a class, and nothing
in the complaint or the pending motions demonstrates that this
action satisfies the requirements to be certified as a class
action.  See Fed. R. Civ. P. 23(a).  Accordingly, this action is
being treated as one brought by the three individual plaintiffs,
and the asserted claims are analyzed based only on the facts
relevant to their confinement.

Correctional Facility or the Lakes Region Correctional Facility.
Defendant Dennis A. Robinson ("Robinson") was director of the
CCHOC at all relevant times.  He has moved for summary judgment
(document no. 9).  For the reasons set forth below, defendant's
motion is granted in part and denied in part.

<u>DISCUSSION</u>

**1.  Background**[2]

Plaintiffs were held on the "B Block" of the CCHOC, which
was the center block of three blocks at the prison.  It contained
four adjacent cells, which were each five feet by seven feet.
Although the cells were designed to hold two men, they typically
held just one inmate.  The cells each contained a toilet and sink
unit, plus a bed.  The row of cells faced a hallway, which was
twenty feet long by four feet wide.  The hallway was referred to

---

[2]The facts are taken from Defendant's "Statement of
Undisputed Material Facts," <u>see</u> Def.'s Mem. in Supp. of M. for
Summ. J. at 2–10 (document no. 9.1) ("Def.'s Mem.") and exhibits
attached thereto ("Def.'s Ex."), and from the affidavits
submitted in support of Plaintiffs' Objection, <u>see</u> Pls.' Obj. to
Def.'s M. for Summ. J. (document no. 12) ("Pls.' Obj.").  <u>See</u>
United States District Court for the District of New Hampshire
Local Rule ("LR") 7.2(b)(1) and (2) (requiring summary judgment
motions be accompanied by a statement of material facts supported
by appropriate record citations, and any objection to state which
facts are disputed with similarly appropriate record citations);
<u>see</u> <u>also</u> Fed. R. Civ. P. 56(c) and (e).

2

as the "bullpen."  B Block had no exterior windows; however, it opened to A Block, which had windows that allowed fresh air to come into the bullpen.

Plaintiffs were confined to the interior space of B Block and deprived of natural light and the out of doors.  The visit room of B Block was at one end of the bullpen and also had no windows.  Plaintiffs ate all their meals in the visit room.  Due to staffing constraints at the CCHOC, plaintiffs were not allowed out in the yard, except on irregular occasions during the summer.  Plaintiffs were allowed out of their cells for two hours per day of free time in the bullpen.  Their recreational activities were limited to board games, cards, and stationary exercises like sit-ups, pull-ups and push-ups, and whatever walking the confined space would enable.

Plaintiffs state that their cells were dirty.  Defendant explains that plaintiffs were responsible for cleaning their cells and were given cleaning supplies daily.  Plaintiffs claim the toilet/sink unit was filthy and contained dirty water, which overflowed occasionally.  They also assert that B Block did not have good heating or ventilation systems, which caused it to be cold in the winter and hot in the summer, but inmates were given

extra blankets in the winter and fans in the summer to compensate for the temperature extremes.  Doors were also opened to facilitate ventilation.

Plaintiff Blomquist was housed at the CCHOC from June 2002 until October 2003, and resided on B Block for seven months.  He asked to be moved out of B Block on December 22, 2002, which request was granted on December 25, 2002.  Plaintiff Haley was held at the CCHOC from December 2002 until July 2003 and spent several months on B Block.[3]  Plaintiff Haley was moved into B Block in January 2003 after he requested to be placed there.  Plaintiff Schonarth was at the CCHOC from March 2002 until August 2003 and spent all his time on B Block.  None of the plaintiffs was housed on B Block for disciplinary reasons.  In November 2003 the CCHOC was razed.

Plaintiffs first filed grievances about the conditions at the CCHOC in February 2006.  Defendant did not respond to those grievances, because the conditions about which they complained no longer existed and plaintiffs were housed elsewhere.  Plaintiffs

---

[3]It is unclear from the pleadings whether Haley left the CCHOC in July 2003 or 2004.  Cf. Pls.' Obj., Aff. of Philip Haley ¶ 2 (document no. 12.3), with Def.'s Mem. at 2.  His departure date, however, does not affect the disposition of the pending motion.

did not pursue the grievances any further through the
administrative review process but, instead, commenced this action
in April 2006.

### 2.  Summary Judgment Standard

Summary judgment is appropriate when "the pleadings,
depositions, answers to interrogatories, and admissions on file,
together with the affidavits, if any, show that there is no
genuine issue as to any material fact and that the moving party
is entitled to a judgment as a matter of law."  Fed. R. Civ. P.
56(c); see also Navarro v. Pfizer Corp., 261 F.3d 90, 93-94 (1st
Cir. 2001) (citing authority).  The burden of showing an absence
of any genuine issues of material fact lies with the moving
party.  See id.  The facts must be viewed in the light most
favorable to the non-moving party, construing all reasonable
inferences in its favor.  See id. (quoting Griggs-Ryan v. Smith,
904 F.2d 112, 115 (1st Cir. 1990); see also Suarez v. Pueblo
Int'l, Inc., 229 F.3d 49, 53 (1st Cir. 2000) (explaining how to
construe the record).  When, as the case is here, the non-moving
party objects to the motion, the burden shifts to it to
demonstrate that there are real disputes about facts which will
affect the final disposition of the claims.  See Navarro, 261

F.3d at 93–94 (objecting party "cannot rely on the absence of competent evidence, but must affirmatively point to specific facts that demonstrate the existence of an authentic dispute"); see also McCarthy v. Northwest Airlines, Inc., 56 F.3d 313, 315 (1st Cir. 1995) (defining material facts and genuine dispute). Only if, after construing the record in the light most favorable to plaintiffs, no genuine issue of material fact emerges, may defendant's motion be adjudicated.   See Navarro, 261 F.3d at 94.

### 3.  Defendant's Argument

Defendant makes six arguments in support of his motion for summary judgment.  First, he contends plaintiffs failed to exhaust their available administrative remedies and are barred, therefore, from bringing this action, pursuant to 42 U.S.C. § 1997e(a).  Second, he states that plaintiffs cannot assert claims based on emotional distress because they neglected to file medical grievance forms related to the alleged injuries, as required by 42 U.S.C. § 1997e(e).  Third, he claims plaintiffs are barred by the statute of limitations from challenging any conditions that existed before April 21, 2003.  Next he contends that those conditions that existed within the relevant time frame, from April 21, 2003, through November 2003, in fact were

constitutional.  Fifth, he asserts the defense of qualified
immunity.  And finally, defendant argues that if plaintiffs
intended to sue him in his official capacity, they have not shown
that a custom or policy caused the alleged deprivations to render
the county liable.

Plaintiffs object to all these arguments, although they
waive their request for compensatory damages for "mental or
emotional injuries" caused by the alleged unconstitutional
conditions at the CCHOC.  See Pls.' Obj. at 6, ¶¶ 15-16.  I
address the remaining arguments below.

(I) Exhaustion

Defendant first contends that because plaintiffs waited
until February 2003 to file grievance forms about the conditions
at the CCHOC, their § 1983 action should be barred based on the
provisions of 42 U.S.C. § 1997e(a).  That section provides:

> No action shall be brought with respect to
> prison conditions under section 1983 of this
> title, or any other Federal law, by a prisoner
> confined in any jail, prison, or other correctional
> facility until such administrative remedies as
> are available are exhausted.

Id. Defendant argues that plaintiffs' delay precluded him from
appropriately responding to their grievance forms because the
identified problems were eliminated when the prison was

7

demolished more than two years earlier.  Because plaintiffs failed to timely submit the grievance forms, defendant concludes that they failed to exhaust the administrative remedies that were available at the CCHOC.

It is undisputed that failing to exhaust available administrative remedies bars a § 1983 action.  See Jones v. Bock, __ U.S. __, 127 S. Ct. 910, 919-20 (2007) (citing Porter v. Nussle, 534 U.S. 516, 524 (2002) for rule that exhaustion requirement applies to all inmate suits about prison life); see also Acosta v. U.S. Marshals Serv., 445 F.3d 509, 512 (1st Cir. 2006) (affirming dismissal for detainee's failure to exhaust county's administrative remedies); Beltran v. O'Mara, 405 F. Supp. 2d 140, 149 (D.N.H. 2005).  Whether or not plaintiffs have exhausted presents a question of law, unless the answer depends on some disputed fact.  See id.  "[T]he PLRA exhaustion requirement requires proper exhaustion," Woodman v. Ngo, 548 U.S. 81, 126 S. Ct. 2378, 2387 (2006), which means strict compliance with all the relevant grievance policies and procedures, even if the relief sought is not an available administrative remedy.  See id. at 2382-83, 2388-90 (discussing the benefits of exhaustion and requiring inmates to follow "the system's critical procedural

rules"); <u>see</u> <u>also</u> <u>Acosta</u>, 445 F.3d at 512 ("'To exhaust remedies,
a prisoner must file complaints and appeals in the place, and at
the time, the prison's administrative rules require.'") (quoting
<u>Pozo v. McCaughtry</u>, 286 F.3d 1022, 1025 (7th Cir. 2002));
<u>Beltran</u>, 405 F. Supp. 2d at 150 (finding improper exhaustion
where inmate failed to follow the proper appeal procedure).

The CCHOC Inmate Grievances Policy Manual does not provide a
time limit on the initial filing of a grievance form.  <u>See</u> Def.'s
Mem, Robinson Aff., Ex. A.[4]  While the policy manual sets forth
deadlines for the prison to respond – within "a reasonable amount
of time" or "within twenty four hours of receipt of the
grievance" if it is "of an emergency nature" – no similar time
frame is required of the inmate.  <u>See</u> <u>id.</u> ¶¶ 3 & 4.  Also
critical to defendant's argument here is the fact that an appeal
is not mandatory, but "may" be requested if the inmate chooses to

_____

[4]The manual appended to defendant's motion indicates that it
was reviewed and revised in February 2003.  Defendant represents
that this manual states the policies and procedures for filing
grievances that applied while plaintiffs were at the CCHOC and
that they were aware of them.  <u>See</u> Def.'s Mem. at 7.  For
purposes of this summary judgment motion, where defendant bears
the burden of establishing plaintiffs' failure to exhaust, I
accept the manual defendant provided in support of his motion as
the governing administrative policy and procedure.  In any event,
if there were a factual dispute about the applicable manual, that
would raise a genuine issue of material fact barring summary
judgment.

do so.  See id. at ¶ 6.  The sole definitive time limit set forth
in the policy and procedure manual occurs if the matter is
appealed to the Carroll County Board of Commissioners.  In that
circumstance, a report on the corrective action taken must be
filed with the Commissioners within thirty days, presumably of
the grievance committee review.  See id. ¶ 9.  Finally, an inmate
"can contact the County Attorney's Office for an external review"
if dissatisfied with the results of the Commissioners' review
committee conclusions, see id., but that review, too, is
optional, not mandatory.

        Based on the plain language of the CCHOC's policies and
procedures for grievance forms, as Woodman's "proper exhaustion"
directive requires, I cannot conclude, as a matter of law, that
plaintiffs failed to exhaust their available administrative
remedies.  To the contrary, they did exactly what the manual
prescribed.  "When the administrative rulebook is silent, a
grievance suffices if it alerts the prison to the nature of the
wrong for which redress is sought.  As in a notice-pleading
system, the grievant need not lay out the facts, articulate legal
theories, or demand particular relief.  All the grievance need do
is object intelligibly to some asserted shortcoming."  Strong v.

<u>David</u>, 297 F.3d 646, 650 (7th Cir. 2002).  While I recognize

plaintiffs' more than two year delay in filing their grievance

forms impedes the policy goals of enabling prison officials to

quickly and efficiently resolve disputes and of creating a record

for those cases which advance to litigation, <u>see</u> <u>Woodman</u>, 126 S.

Ct. at 2385, § 1997e(a) has been consistently construed to

require strict adherence to the prison's particular procedural

rules.  <u>See</u> <u>id.</u> at 2388; <u>Acosta</u>, 445 F.3d at 513; <u>Medina-Claudio</u>

<u>v. Rodriguez-Mateo</u>, 292 F.3d 31, 34-35 (1st Cir. 2002) (requiring

inmate to follow prison's grievance policy even though he had

been transferred from the facility and its remedies would not

provide the relief sought).  Based on the undisputed facts,

plaintiffs did that.  Whether or not the delay undermines

plaintiffs' claims of constitutional injury raises a factual

issue for the jury to resolve.  Defendant's motion for summary

judgment based on plaintiffs' failure to properly exhaust the

available administrative remedies is denied.

   (ii)  <u>Emotional or Mental Injuries</u>

   Defendant's second argument is that plaintiffs' request for

compensatory damages for emotional or mental injuries is barred

by 42 U.S.C. § 1997e(e).  He contends that because there is no

11

evidence that plaintiffs suffered physical injury from the
challenged conditions, § 1997e(e) prevents plaintiffs from
recovering money damages for any emotional or mental distress
those conditions allegedly caused.

Section 1997e(e) provides:

> No Federal civil action may be brought by a
> prisoner confined in a jail, prison, or other
> correctional facility, for mental or emotional
> injury suffered while in custody without a prior
> showing of physical injury.

Id. (2003).  Regardless of the alleged claim that caused the
mental or emotional injury, "[t]he plain language of the statute
does not permit alteration of its clear damages restrictions on
the basis of the underlying rights being asserted."  Searles v.
Van Bebber, 251 F.3d 869, 876 (10th Cir. 2001).  "The statute
limits the remedies available, regardless of the rights asserted,
if the only injuries are mental or emotional."  Id. (citing
Robinson v. Page, 170 F.3d 747, 748 (7th Cir. 1999)); see also
Hines v. Oklahoma, No. CIV-07-197-R, 2007 WL 3046458, *6 (W.D.
Okla. Oct. 17, 2007) (finding § 1997e(e) bars claim for
compensatory damages for intentional infliction of emotional
distress because no physical injury was alleged); but see Bromell
v. Idaho Dep't of Corrections, No. CVO5-419-N-LMB, 2006 WL

3197157, *5 (D. Idaho Oct. 31, 2006) (concluding § 1997e(e) bars a federal civil action, but not a state-law claim, for emotional injury).  I agree with the line of cases which conclude that § 1997e(e) applies to all actions that are brought in federal court which seek damages for mental or emotional injury, regardless of whether the underlying cause of action is based on federal or state law.

Additionally, although plaintiffs initially sought compensatory damages for mental and emotional distress based on state tort law, see Compl., Count II, plaintiffs now concede they did not file medical grievance forms, or obtain any other evidence of physical injury, related to the conditions of confinement challenged here, and they "concede that the statute thus precludes them from seeking compensatory damages for mental or emotional injuries." Pls.' Obj. ¶ 16.  New Hampshire law also requires a showing that physical injury resulted from the emotional distress allegedly caused by defendant's conduct.  See In re Bayview Crematory, LLC., 155 N.H. 781, 786, 930 A.2d 1190, 1195 (2007) (defining negligent infliction of emotional distress); Silva v. Warden, 150 N.H. 372, 374-75, 839 A.2d 4, 6-7 (2003) (finding  expert testimony unnecessary to prove physical

symptoms suffered from emotional distress caused by intentional assaults like the unreasonable strip search of a prisoner); Thorpe v. State of N.H. Dep't of Corr., 133 N.H. 299, 304-05, 575 A.2d 351, 353-54 (1990) (holding that physical injury is required to state a claim for emotional distress).  By conceding they neglected to "allege any physical injuries related to the challenged conditions,"  Pls.' Obj. ¶ 16, plaintiffs have waived any claims initially asserted in Count II.

Since, as a matter of both federal and state law, a showing of physical injury is required before compensatory damages may be awarded for claims of mental or emotional injury, and plaintiffs concede they have not made that prerequisite showing, defendant's motion for summary judgment is granted to the extent that plaintiffs request compensatory damages for emotional and mental injuries.

### (iii) Statute of Limitations

Defendant next argues that any claims based on conduct or conditions that occurred before April 21, 2003, are barred by the statute of limitations, because this action was filed on April 21, 2006, and New Hampshire law provides a three year statute of limitations for personal injury actions.  See N.H. Rev. Statutes

14

Ann. ("RSA") 508:4 (1997) ("all personal actions . . . may be brought only within 3 years of the act or omission complained of"); see also Wilson v. Garcia, 471 U.S. 261, 266-67 (1985) (holding that the forum's state law statute of limitations applies in § 1983 cases); Lopez-Gonzalez v. Municiplaity of Comerio, 404 F.3d 548, 551 (1st Cir. 2005) (same).

Plaintiffs counter that they are entitled to bring claims based on all the conduct and conditions which they were subjected to while incarcerated at the CCHOC, because it was all part of a course of conduct that ended within the statute of limitations, citing Mack v. Great Atl. & Pac. Tea Co., 871 F.2d 179 (1st Cir. 1989) and Rosario-Rivera v. Aqueduct & Sewer Auth. of P.R., 472 F. Supp. 2d 165 (D.P.R. 2007). Those two cases expanded the statute of limitations in employment discrimination actions by applying the "continuing violation" doctrine, which recognizes that acts that fall outside the relevant time period which can be linked to acts within the appropriate time frame may constitute one actionable course of conduct. See id. at 170-71 (citing authority to discuss the origins of the doctrine in Title VII cases); see also Mack, 871 F.2d at 182 (declining to extend limitations period based on continuing serial violation because

no act of the alleged racial and sexual discrimination occurred within the appropriate time frame).  Plaintiffs now seek to extend the continuing violation doctrine beyond the employment context to their claims of unconstitutional conditions of confinement.

While the continuing violation doctrine is most commonly applied in the employment context, it has been extended to § 1983 actions challenging prison conditions.  See e.g. Smith v. Shorstein, 217 Fed. Appx. 877, 880–81 (11th Cir. 2007) (explaining how the limitations clock starts to run when the continuing violation ceases); Foster v. Morris, 208 Fed. Appx. 174, 177–78 (3rd. Cir. 2006) (applying doctrine to reach untimely acts if they are related to and part of a continuing practice); Shannon v. Babb, 103 Fed. Appx. 201, 201–02 (9th Cir. 2004) (affirming dismissal of untimely prisoner claim for lost property because subsequent losses were caused by the initial decision and were not part of a pattern of conduct); Lovett v. Ray, 327 F.3d 1181, 1183 (11th Cir. 2003) (emphasizing that plaintiff must complain of a continuing violation not a present consequence of a past violation); Griswold v. Morgan, 317 F. Supp. 2d 226, 231 (W.D.N.Y. 2004) (citing Pino v. Ryan, 49 F.3d 51, 54 (2d Cir.

1999)).  Whether in the employment or the prison context, the
continuing violation doctrine is "an equitable exception that
allows [a plaintiff] to seek damages for otherwise time-barred
allegations if they are deemed part of an ongoing series of []
acts and there is 'some violation within the statute of
limitations period that anchors the earlier claims.'"  O'Rourke
v. City of Providence, 235 F.3d 713, 730 (1st Cir. 2001) (quoting
Provencher v. CVS Pharm., 145 F.3d 5, 14 (1st Cir. 1998) in the
context of employment discrimination).

     The critical issue in determining whether the doctrine
applies is whether plaintiffs suffered from the ongoing effects
of some past violation, in which case it would not, or whether
plaintiffs suffered anew from distinct civil rights violations
that were part of some continuous chain of activity, in which
case the doctrine may be invoked.  See O'Rourke, 235 F.3d at 730–
31 (describing contours of the doctrine in the employment
context); Smith, 217 Fed. Appx. at 881 (applying doctrine to
continued unlawful detention of plaintiff); Lovett, 327 F.3d at
1183 (finding change of plaintiff's parole date was a one-time
act with continued consequences and therefore not within the
doctrine).  This inquiry focuses on the point at which plaintiffs

17

were put on notice of the violation, to trigger the obligation to assert their rights within the appropriate time.  See id. at 1182 (explaining that the statute begins to run when facts which would support a cause of action would be apparent to the reasonably prudent plaintiff); see also Sabree v. United Bhd. of Carpenters & Joiners, 921 F.2d 396, 401-02 (1st Cir. 1990) (discussing the policy goals behind statute of limitations for Title VII claims). If the prior act is substantially related to the act which falls within the relevant time period, then a continuing violation may be found.  See id. "'What matters is whether, when and to what extent the plaintiff was on inquiry notice.'"  Id. at 402 (quoting Jensen v. Funk, 912 F.2d 517, 522 (1st Cir. 1990)).

A continuing violation may be either systemic or serial. Which type of violation plaintiffs assert here is not entirely clear.  Plaintiffs argue that the unconstitutional conditions on B Block existed continuously from the time each was housed there until they were removed from the CCHOC.  Repeated acts of unconstitutional treatment, however, even if they are similar, do not necessarily demonstrate a continuing violation.  See e.g. Foster, 208 Fed. Appx. at 178 (declining to apply doctrine where failure to make prison handicap accessible was a permanent

problem about which plaintiff knew every time he was transferred

to the facility); cf. Smith, 217 Fed. Appx. at 881 (series of

transfers and detentions constituted a continuing violation);

Griswold, 317 F. Supp. 2d at 231 (alleging a long series of

events denying plaintiff treatment may demonstrate a continuing

deliberate indifference to his medical needs).  Whether or not

plaintiffs may avail themselves of the doctrine depends on the

answers to the following queries:

> (1) subject matter – whether the violations
> constitute the same type of unconstitutional
> treatment, such that there is a substantial
> relationship between the otherwise untimely
> acts and the timely acts, tending to connect
> them in a continuing violation;
>
> (2) frequency – whether the acts were recurring
> or more isolated and discrete; and
>
> (3) permanence – whether the act had a degree
> of permanence that should have triggered
> plaintiffs' awareness of the need to assert
> their rights, and whether the consequences
> of the act would continue regardless of
> defendant's intent.

See Foster, 208 Fed. Appx. at 178 (citing Cowell v. Palmer Twp.,

263 F.3d 286, 292 (3rd Cir. 2001); see also O'Rourke, 235 F.3d at

731.

These questions cannot be answered on the record before me.

Although I am not prepared at this juncture to rule that all

claims based on the conditions on B Block before April 21, 2003, are barred by the statute of limitations, I am also not prepared to decide that plaintiffs can invoke the continuing violation doctrine.  The current record does not contain sufficient evidence to determine the applicability of the doctrine at this juncture.  Accordingly, a final decision on its application to the facts presented here shall be deferred to a later date after discovery is complete.  Defendant's motion for summary judgment based on the statute of limitations, for now, is denied.

### (iv)  Challenged Conditions

Defendant next seeks summary judgment contending that the conditions at the CCHOC during plaintiffs' stay there were, in fact, constitutional.  In support of this argument defendant cites the numerous grievance forms plaintiffs filed while housed there, none of which complained about the conditions challenged here.  This argument is unavailing, however, because the record raises more disputes of fact about the conditions at the CCHOC than it resolves.  Because these factual issues are material to the resolution of plaintiffs' alleged unconstitutional detention, summary judgment cannot be granted about the conditions on B Block at this stage in the proceedings.

Defendant's motion is granted, however, with respect to the Eighth Amendment claims.  Plaintiffs allege that the challenged conditions violated both their Eighth and their Fourteenth Amendment rights.  As pretrial detainees, however, the conditions of their confinement are protected by the Fourteenth, not the Eighth, Amendment.  See Bell v. Wolfish, 441 U.S. 520, 535 (1979 (pretrial conditions of detention implicate the protection of deprivation of liberty without due process of law); Surprenant v. Rivas, 424 F.3d 5, 18 (1st Cir. 2005) (explaining that pretrial detainee's conditions of confinement implicate Fourteenth Amendment liberty interests).  "For under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law."  Bell, 441 U.S. at 520; see also Martinez–Rivera v. Ramos, 498 F.3d 3, 9 (1st Cir. 2007) (same).  The Fourteenth Amendment rights of pretrial detainees are coextensive with the Eighth Amendment's prohibition against cruel and unusual punishment, and claims for violations of those rights must satisfy both objective and subjective criteria.  See Surprenant, 424 F.3d at 18 (citing Farmer v. Brennan, 511 U.S. 825, 834 (1994)); Burrell v. Hampshire County, 307 F.3d 1, 7 (1st Cir. 2002) (citing Bell, 441 U.S. at 545).  Whether or not the

conditions on B Block objectively denied plaintiffs "the minimal
civilized measure of life's necessities," <u>Farmer</u>, 511 U.S. at
834, and whether or not defendant acted with "deliberate
indifference" to the risks presented by those conditions, <u>id.</u>,
raises questions of fact that a jury must resolve.  Accordingly,
the Eighth Amendment claims are dismissed and the action shall
proceed with only the Fourteenth Amendment claims.

### (v)  Official and Individual Capacity Liability

Finally, defendant argues this action should be dismissed on
summary judgment, because it cannot be brought against him in his
official capacity, and he is entitled to qualified immunity for
claims against him in his individual capacity.[5]  Plaintiffs have
declined to respond to these arguments.

Bringing this suit against defendant in his official
capacity, as the Director of the CCHOC, is the same as bringing a
suit against Carroll County.  <u>See</u> <u>Surprenant</u>, 424 F.3d at 19
(citing authority).  In order to hold the county liable,

---

[5]Although defendant submits that plaintiffs are not clear
about whether they intend to sue him in his official or
individual capacity, or both, I will assume plaintiffs intended
to sue defendant in both capacities because they define defendant
as the "Director of the Carroll County Department of Corrections,
an agency of the Carroll County government," and they seek both
declaratory and monetary relief.  <u>See</u> Compl., ¶¶ 6 & 36.

plaintiffs must prove that a "'policy, statement, ordinance, regulation or decision officially adopted and promulgated by' those in charge of the jail" directly caused the allegedly oppressive conditions about which they now complain. Id. (quoting Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 (1978)). "A custom or practice may suffice to show such a policy if it is so widespread or pervasive that the policymakers must have had actual or constructive notice of it, yet did nothing to modify it." Id. The undeveloped record precludes me from discerning whether there was some policy, custom or practice in place that caused the conditions at the CCHOC to be unconstitutional throughout the time period alleged, or whether the conditions were, in fact, constitutionally acceptable. See id. at 20-21 (proving the existence of a policy or custom and establishing whether such policy was imposed with the requisite scienter involve questions of fact). As a result, it is premature to determine that the county's liability, or lack thereof, at this time.

Finally, defendant contends that he is entitled to qualified immunity to protect himself from plaintiffs' request for monetary damages based on the conditions they endured while housed on B

Block.  Qualified immunity would protect defendant from civil
liability as long as the challenged conduct did not violate
clearly established law.  See Harlow v. Fitzgerald, 457 U.S. 800,
818 (1982) (qualified immunity is available unless the right was
so "clearly established" that a reasonable officer would have
understood its dimensions and known his conduct violated the
right); see also Surprenant, 424 F.3d at 14 (stating a three-part
test to determine if defendant enjoys qualified immunity).  Long
before plaintiffs were detained at the CCHOC in 2002 and 2003,
the law was clearly established that some combinations of
conditions can amount to unconstitutional punishment of pretrial
detainees.  See e.g. Bell, 441 U.S. at 545 ("*A fortiori*, pretrial
detainees, who have not been convicted of any crimes, retain at
least those constitutional rights that we have held are enjoyed
by convicted prisoners); Farmer, 511 U.S. at 832-37 (discussing
the scope of protection afforded prisoners); Rhodes v. Chapman,
452 U.S. 337, 349 (1981).

Since the Fourteenth Amendment's protection of pretrial
detainees is coextensive with the Eighth Amendment's protection
of prisoners, the violations alleged here are subject to the same
framework as an Eighth Amendment claim would be.  See Surprenant,

24

424 F.3d at 18 (guarantees afforded by the Fourteenth Amendment
for pretrial conditions of confinement are coextensive with the
Eighth Amendment's guarantees for prison conditions); Burrell,
307 F.3d at 7 (analyzing pretrial detainee's claim according to
the Eighth Amendment framework laid out in Farmer).  Since at
least Farmer, decided in 1994, if not as early as Bell, decided
in 1979, it has been clear that "a prison official cannot be
found liable under the [Constitution] for denying an inmate
humane conditions of confinement unless the official knows of and
disregards an excessive risk to inmate health or safety; the
official must both be aware of facts from which the inference
could be drawn that a substantial risk of serious harm exists,
and he must also draw the inference."  Id. at 837; see also Bell,
441 U.S. at 545.  Defendant can be fairly charged with knowing
this standard of care.  See Harlow, 457 U.S. at 818.

     As discussed above, the record does not establish whether
the alleged conditions in fact violated constitutional standards,
or whether defendant knew of those unconstitutional conditions
but chose to do nothing to alleviate them.  Whether the facts
ultimately demonstrate that the conditions at the CCHOC were so
oppressive and burdensome that they violated plaintiffs'

Fourteenth Amendment rights will determine whether or not defendant is liable.  If plaintiffs allegations prove to be true, however, defendant cannot protect himself from liability with the defense of qualified immunity.  As a result, defendant's motion based on the defense of qualified immunity is denied.

<u>Conclusion</u>

As explained more fully above, defendant's motion for summary judgment (document no. 9) is granted in part and denied in part.  Defendant's motion is granted with respect to the following:

> – the request for compensatory damages for claims based on anxiety, anguish and extreme emotional distress is barred by 42 U.S.C. § 1997e(e);

> – Count II is dismissed because plaintiffs concede they alleged no bodily injury related to the challenged conditions;

> – the claims based on alleged violations of plaintiffs' Eighth Amendment rights are dismissed, because plaintiffs were all pretrial detainees during the challenged period and were, therefore, protected by the Fourteenth Amendment.

In all other respects, the motion is denied.  I also conclude that, as a matter of law, defendant cannot avail himself of the defense of qualified immunity.

**SO ORDERED.**

_____
James R. Muirhead
United States Magistrate Judge


Date:  February  22, 2008

cc:  Michael J. Sheehan, Esq.
     Charles P. Bauer, Esq.
     Lisa M. Lee, Esq.